**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| William Lamonte Bodney,        Petitioner,  vs.  David Shinn; et al.,        Respondents. | CV 20-00373-TUC-CKJ (LAB)  **REPORT AND RECOMMENDATION** |

Pending before the court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, filed on August 31, 2020 by William Lamonte Bodney, a prisoner currently incarcerated in the Arizona State Prison Complex in Florence, Arizona. (Doc. 1)

Pursuant to the Rules of Practice of this court, the matter was referred to Magistrate Judge Bowman for report and recommendation. LRCiv 72.2(a)(2).

The Magistrate Judge recommends that the District Court, after its independent review of the record, enter an order denying the petition on the merits. The trial court's denial of Bodney's motion to sever counts did not deprive him of a fair trial. The evidence was sufficient to support the jury's verdict. Trial counsel was not ineffective for failing to challenge the grand jury proceedings a third time.

Summary of the Case

"After a jury trial, William Bodney was found guilty of attempted robbery, robbery, burglary, two counts of armed robbery, two counts of aggravated assault, and possession of a

deadly weapon by a prohibited possessor." (Doc. 13-7, p. 99) "The trial court sentenced him to a combination of concurrent and consecutive prison terms totaling 25.75 years." *Id.*

On direct appeal, Bodney argued that (1) the trial court erred by denying his motion to sever counts and (2) the evidence was insufficient to support his convictions. (Doc. 13-7, pp. 31, 44, 45) On April 28, 2017, the Arizona Court of Appeals affirmed his convictions and sentences. (Doc. 13-7, pp. 98-110) These two claims appear in the pending petition.

Bodney filed a belated petition for post-conviction relief on January 28, 2019. (13-8, p. 2, 4) He claimed that (1) he was denied due process because a detective testified falsely, (2) the state failed to present exculpatory evidence to the grand jury, (3) evidence was presented at trial that resulted from impermissibly suggestive identification procedures, (4) the evidence was insufficient, (5) the trial court erred by failing to sever the charges against him, and (6) counsel were ineffective. (Doc. 13-10, p. 2) The trial court found that counsel were not ineffective and Bodney's remaining grounds for relief were procedurally barred. (Doc. 13-10, pp. 2-10)

Bodney filed a petition for review arguing (1) "there were defects in his grand-jury proceeding," (2) the "photo lineups leading to his identification had been unduly suggestive," (3) "trial counsel was ineffective in failing to seek special-action relief with regard to his grand-jury claims," and (4) "trial counsel could not have waived his identification claim by failing to raise it on appeal." (Doc. 13-11, p. 28-29) The Arizona Court of Appeals granted review but denied relief on October 16, 2019. (Doc. 13-11, p. 27) The court denied claims (1) and (2) as precluded and denied claims (3) and (4) because Bodney failed to offer evidence or authority for his arguments. *Id.* Claim (3) appears in the pending petition. Bodney's petition for review with the Arizona Supreme Court was denied summarily on March 27, 2020. (Doc. 13-11, p. 31)

On August 31, 2020, Bodney filed in this court a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1) He claims (1) "the trial court erred when it denied [his motion] to sever the charged robbery offenses," (2) "the jury's verdict was not supported by substantial evidence," and (3) "defense counsel's failure to continue to challenge the Grand Jury proceedings . . . constituted ineffective assistance of counsel." (Doc. 1, pp. 5, 27, 31)

On January 14, 2021, the respondents filed their answer. (Doc. 13) They argue Bodney's first claim is procedurally defaulted because the federal nature of the claim was not presented to the Arizona Court of Appeals. (Doc. 13, pp. 9-10) They further argue that all claims should be denied on the merits. (Doc. 13) Bodney failed to file a timely reply.

The petition should be denied on the merits. The court does not reach the respondents' alternate arguments.

Discussion

The writ of habeas corpus affords relief to persons in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). If the petitioner is in custody pursuant to the judgment of a State court, the writ will not be granted unless prior adjudication of the claim –

>  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). If the highest State court fails to explain its decision, this court looks to the last reasoned State court decision. *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). In this case, the last reasoned State court decisions came from the Arizona Court of Appeals.

"[The] standard is intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316, 135 S.Ct. 1372, 1376 (2015) (punctuation modified). "'[C]learly established Federal law' for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of th[e] [Supreme] Court's decisions." *Id.*

A decision is "contrary to" Supreme Court precedent if that Court already confronted "the specific question presented in this case" and reached a different result. *Woods*, 135 S.Ct. at 1377. A decision is an "unreasonable application of" Supreme Court precedent if it is "objectively unreasonable, not merely wrong; even clear error will not suffice." *Id.* at 1376. "To satisfy this high bar, a habeas petitioner is required to show that the State court's ruling on the

claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. (punctuation modified).

If the petitioner argues that prior adjudication "resulted in a decision that was based on an unreasonable determination of the facts" pursuant to section 2254(d)(2) then "the petitioner must establish that the state court's decision rested on a finding of fact that is *objectively* unreasonable." *Hibbler v. Benedetti*, 693 F.3d 1140, 1146 (9th Cir. 2012) (punctuation modified) (emphasis in original).

Discussion: Severance

In Claim (1), Bodney asserts that "the trial court erred when it denied [my motion] to sever the charged robbery offenses which deprived Petitioner a fair trial, in violation of the sixth and fourteenth amendments." (Doc. 1, p. 5) Bodney raised this claim in his direct appeal. (Doc. 13-7, pp. 98-110)

Bodney was charged with twelve individual counts that "arose out of seven separate robberies of convenience stores and a restaurant occurring between August 21 and August 28, 2014." (Doc. 13-7, p. 99); *State v. Bodney*, 2017 WL 1548543, at *1 (Ariz. App. 2017). He filed a motion to sever the robbery charges from each other, but his motion was denied by the trial court. *Id.* (His motion to sever the prohibited possessor charge was granted. *Id.*)

At trial, the State presented evidence pertaining to all seven robberies although the jury found Bodney guilty of charges associated with only four of those robberies. (Doc. 13-7, p. 100) The Arizona Court of Appeals described the charges and evidence presented as follows:

> Count 2 of the indictment charged Bodney with the attempted robbery of K.S. on August 21, 2014. Specifically, on that afternoon, a man entered a CVS store and handed K.S., the cashier, a note saying it was a robbery and he had a gun. K.S. walked away from the man, who then left the store empty-handed. R.D., a CVS manager who was also present during the attempted robbery, later identified Bodney in a photographic line-up.
>
> Counts 3 and 4 charged Bodney with robbing P.N. and burglarizing the 99 Cent Store where she was a cashier on August 21, 2014. In particular, in the late afternoon of August 21, a man threatened to shoot P.N., and when she opened the

register, he reached into it and grabbed more than $200 in cash. P.N. identified Bodney as the robber.

Counts 5 and 6 charged Bodney with the armed robbery and aggravated assault of A.A. on August 23, 2014. Those offenses arose from a man having laid a handgun on the Dollar General counter and telling A.A., the cashier, to give him the money from the register. The man left the store with over $200 in cash.

Counts 11 and 12 charged Bodney with the August 28, 2014 armed robbery and aggravated assault of C.A. after a man went into the Quik Mart where C.A. was a cashier, pointed a gun at her, and demanded money, which she gave him.

As for the charges for which the jury did not convict Bodney, Count 1 was based on the robbery of L.G. on August 21, 2014. That morning, a man robbed a pizza restaurant of $50 after showing the cashier, L.G., a note written on a piece of paper. The robber threatened her, saying he had a gun and demanding the cash from the register.

Counts 7 and 8 charged Bodney with the armed robbery and aggravated assault of J.M. on August 24, 2014. J.M., a Quik Mart store clerk, handed over about $50 after the robber displayed a handgun and told her, "you know what to do."

Counts 9 and 10 charged the armed robbery and aggravated assault of N.M. on August 24, 2014. The robber threatened N.M., a Quik Mart clerk, with a gun and demanded cash. The clerk later identified Bodney as the robber.

(Doc. 13-7, pp. 100-101)

The Arizona Court of Appeals held that joinder of the counts was permitted under Ariz.R.Crim.P.13.3(a)(3) because they were "part of a common scheme or plan." (Doc. 13-7, pp. 101-104)  The State submitted evidence that about a month before the robberies, Bodney sent messages on Facebook asking to borrow money and "saying he was 'really debating doing sum [sic] dumb shit' because he was 'feeling the pressure of being broke,' 'ain[']t got shit,' and knew 'how easy it is to run up in the thang thang and get it.'" (Doc. 13-7, pp. 103-104)  "He further stated that, although he was 'trying to stay out,' being broke 'ain[']t me.'" (Doc. 13-7, p. 104)  The State court concluded that the series of robberies, which occurred within an eight-day period, were committed as part of a common scheme or plan to remedy Bodney's acute money shortage. (Doc. 13-7, p. 104)

The Arizona Court of Appeals further found that severance was not required "to promote a fair determination of guilt or innocence." (Doc. 13-7, p. 105)  The Court of Appeals noted that the trial court "instructed the jury at trial 'to make sure the State has proved each of the

charges beyond a reasonable doubt each time.'" *Id.*  The trial court gave the following instruction to the jury:

> It is important for you to know that each count charges a separate and distinct offense. When deciding whether the State has proven one count to you beyond a reasonable doubt, you may only consider evidence presented concerning other counts to the extent that evidence shows a common scheme or plan or to the extent the other evidence is relevant to the question of identity. It is not sufficient if the acts are similar, there must be a high degree of similarity and uniqueness.

*Id.* The Court of Appeals concluded that "These instructions were sufficient to prevent compelling prejudice from a single trial on the twelve counts." *Id.* (punctuation modified). Moreover, the Court of Appeals noted that the jury convicted Bodney of counts arising from four of the robberies but acquitted him of counts arising from three others. (Doc. 13-7, p. 106) This was further evidence that the jury was able to keep separate the evidence submitted for each of the seven robberies. *Id.*

In his petition, Bodney argues at some length that the trial court's decision to deny his motion to sever was an abuse of discretion under the Arizona Rules of Criminal Procedure. That does not matter. *See Grisby v. Blodgett*, 130 F.3d 365, 370 (9th Cir. 1997) ("We do not depend on state law governing severance in state trials."). A writ of habeas corpus will not issue to remedy state law errors. *Id.* Instead, Bodney must show that the trial court's failure to grant his motion to sever "rendered his trial fundamentally unfair" violating his right to Federal due process. *Id.* (punctuation modified).

On this issue, Bodney argues that by trying all counts together, the jury might convict him on one count based on evidence submitted to prove an entirely different offense. Differences in the evidence pertaining to the various robberies, he maintains, could be overlooked "when all of the counts are boot-strapped together and tried collectively, as a juror's natural tendency is to believe that if a petitioner committed one of the robberies, he likely committed others, if not all." (Doc. 1, p. 25) Bodney highlights a problem that is always present when separate crimes are tried together. He does not, however, explain why that problem is especially acute in his case.

Here, the trial court took pains to ensure that this problem was minimized. The court instructed the jury specifically that each offense is separate and distinct and evidence offered about other offenses could only be considered as evidence establishing a common scheme or plan or evidence on the question of identity. The jury convicted Bodney of some of the charges but acquitted him of others indicating that the jury was able to distinguish between the various charged offenses. *See United States v. Unruh*, 855 F.2d 1363, 1374 (9th Cir. 1987) ("The best evidence of the jury's ability to compartmentalize the evidence is its failure to convict all defendants on all counts.").

Bodney has not shown that prior adjudication of this issue "resulted in a decision that was contrary to or an unreasonable application of Supreme Court precedent" or that it "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Discussion: Sufficiency of the Evidence

In his second Claim, Bodney argues that the evidence was insufficient to support his convictions. (Doc. 1)  Bodney raised this claim in his direct appeal.   (Doc. 13-7, pp. 98-110)

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073 (1970).  On review for sufficiency of the evidence "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979) (emphasis in original).  Moreover, the court "cannot second-guess the jury's credibility assessments; rather, under *Jackson*, the assessment of the credibility of witnesses is generally beyond the scope of review." *Kyzar v. Ryan*, 780 F.3d 940, 943 (9th Cir. 2015)  (punctuation modified).  Because this issue is raised in a petition for writ of habeas corpus, the petitioner is entitled to habeas relief only if the state court's decision in this matter

was contrary to, or an unreasonable application of the *Jackson* standard. 28 U.S.C. § 2254(d)(1); *Juan H. v. Allen*, 408 F.3d 1262, 1274-75 (9th Cir. 2005).

The Arizona Court of Appeals summarized the evidence presented at trial and gave the following analysis:

> Count 2—Attempted Robbery at CVS on August 21, 2014
>
> K.S., a CVS cashier, testified a man handed her a note that said he wanted the cash from the register and had a gun, which he would use. K.S. was frightened, put down the note, and walked away. The man then ran out the door. During the encounter, K.S. had noticed there was something wrong with the man's eye. Although she was unable to later identify Bodney as the attempted robber during a photographic line-up, she testified the eye problem "was the main thing [she] was looking for" and Bodney's eyes appeared normal in his line-up photo.
>
> R.D., a CVS supervisor who was also present during the attempted robbery, testified she noticed the would-be robber when K.S. left him, because it was unusual for K.S. to walk away from a customer. At that point, the man looked at R.D. before running out the door, passing within four or five feet of her. R.D. too noticed a problem with the man's eye, but still identified Bodney during a photographic line-up seven weeks later and again at trial. The state also introduced the store's surveillance video of the robbery, which showed a man whose appearance was consistent with Bodney's build, height, and facial features.
>
> T.F., Bodney's girlfriend, testified Bodney had an eye infection in late August 2014 and she had taken him to a hospital for treatment on August 26. The state introduced video surveillance of the two of them at the hospital and, shortly thereafter, at a pharmacy, filling Bodney's prescription.
>
> Counts 3 & 4—Robbery at 99 Cent Store on August 21, 2014
>
> P.N., a 99 Cent Store clerk, testified the robber bought some dishwasher detergent, left the store, and then returned a few minutes later to ask for cigarettes and rolling papers. After he handed her some money, P.N. opened the register and the robber reached across the counter and grabbed cash from it while telling P.N. he had a gun and would shoot her if she did not stay quiet. P.N. identified Bodney as the robber both during a photographic line-up and in court. Regarding the line-up, P.N. testified through an interpreter, "I look at that picture and I feel it right away that's the right person." The state also introduced the store's surveillance video of the robbery, which, again, showed a man whose appearance was consistent with Bodney's build, height, and facial features.
>
> Counts 5 & 6—Armed Robbery at Dollar General on August 23, 2014
>
> A.A., a Dollar General cashier, testified a man approached her at the check-out counter and asked for cigarettes. When she requested identification, he produced a handgun, pointed it at her, and told her to give him the cash from the register and not make any quick movements. After A.A. handed him the money and the cigarettes, he told her to "[s]tand here and act natural for a second" before he left the store. She too noticed something wrong with the robber's eye but was unable

to identify[1] anyone in the photographic line-up. Surveillance video footage of the robbery showed a man matching Bodney's height and build.

Counts 11 & 12—Armed Robbery at Quik Mart on August 28, 2014

C.A., a Quik Mart cashier, was checking the freezer temperatures when a man entered the store wearing sunglasses. C.A. testified he took a beer from the beverage cooler, brought it to her at the counter, and asked for cigarettes. She had trouble hearing him because he had music playing from a device on his person, but then she saw a handgun on the counter pointed at her. The man told her to empty the cash register and to "be cool." C.A. "was very scared" and gave him about $56. Surveillance video footage again showed a man with Bodney's physical and facial features. Additionally, a palm print found on the counter near the cash register was matched to Bodney's hand.

The state also introduced evidence of Bodney's financial motivation for committing the robberies. Specifically, the state introduced the Facebook messages discussed above. Those posts were from an account that featured numerous photographs of Bodney, which multiple witnesses confirmed belonged to him. Also included was an entry from the same account on August 14, 2014, one week before the first robbery, in which Bodney stated, "I gotta do what I gotta do, times is hard and I'm tired of being broke, I'm tired of waitin['] for shit to get right, I'm a go get it the best way I know how and if I get caught I'm not goin['] bac[k]."

Finally, when a detective interviewed Bodney on the day he was arrested, Bodney volunteered he had been in Las Vegas between August 20 or 21 and August 30. But neither the detective nor the United States Marshal who initially took him into custody had told Bodney the time frame of the robberies they were investigating. We conclude the evidence was sufficient for the jury to find that Bodney had robbed or attempted to rob the four stores and had committed the related offenses of which he was convicted.

Count 13—Prohibited Possession

The jury received testimony and exhibits showing Bodney had been convicted of a felony and was on parole on September 3, 2014. When Bodney was arrested at M.D.'s house on that date, he answered the door barefoot and the police asked him if he had any shoes or personal items in the house. Bodney said his cell phone and "Miami Heat" hat were there. M.D. also testified the hat belonged to Bodney. Police subsequently took a cheek swab from Bodney for his DNA[3] and conducted a search of M.D.'s house. Inside, they found Bodney's hat and, underneath it, a loaded handgun.

A crime laboratory technician testified she compared Bodney's DNA and DNA found on the gun. Although there was not enough material on the gun for a "full

---

[1] A.A. apparently was "looking for the eye" when reviewing the photographic line-up and did not see it. (Doc. 13-6, p. 547)  She further testified that the robber was wearing a "doo rag" with long tassels just like the robber of the CVS and the 99 cent store. (Doc. 13-6, pp. 540, 543-544); (Doc. 13-6, pp. 586, 588-589);  (Doc. 13-6, p. 1022)

profile," the technician was able to conduct a more limited Y–STR4 analysis and determine it was consistent with Bodney's DNA and those in his male paternal line, and statistically would match the DNA of about 1 in 750 African American males. At trial, Bodney's nephew testified Bodney had borrowed the hat from him, but the nephew also stated he was Bodney's sister's son. The lab technician specifically testified a man would not share the same Y–STR DNA profile as his sister's son. The technician also stated that although it would be possible for DNA to transfer from the hat to the gun beneath it, there would likely need to be some friction for such a transfer to occur.

Finally, the jury heard the testimony of two witnesses regarding whether M.D. kept guns in her house. M.D. testified that she did not have any guns and that she and her school-age son were the only people who lived there. Bodney's girlfriend, T.F., however, testified M.D. was "known to have guns [and] drugs." The jury was entitled to decide whether to reject T.F.'s testimony in favor of M.D.'s. *See State v. Cox*, 217 Ariz. 353, ¶ 27, 174 P.3d 265, 269 (2007) ("No rule is better established than that the credibility of the witnesses and the weight and value to be given to their testimony are questions exclusively for the jury."), *quoting State v. Clemons*, 110 Ariz. 555, 556–57, 521 P.2d 987, 988–89 (1974).

The handgun here was found under Bodney's hat, in a residence where he had spent the night, and under all the circumstances, including the fact M.D. testified she did not keep guns in the house, the jury could reasonably infer the gun was in Bodney's possession. Accordingly, there was sufficient evidence to find Bodney had knowingly possessed a deadly weapon after having been convicted of a felony, in violation of A.R.S. § 13–3102(A)(4).

(Doc. 13-7, pp. 107-110); *State v. Bodney*, 2017 WL 1548543, at *5-7 (Ariz. Ct. App. 2017).

Bodney argues that the evidence was insufficient to identify him as the robber of these four businesses because the witnesses' descriptions of the robber varied so much. One witness said the robber was 5'7", while another said he was 6'2". (Doc. 1, p. 27) One witness said the robber had a medium build, and another said he was 250 pounds. (Doc. 1, pp. 27-28) One witness said the robber had no hair, while another said he had 1" long hair. (Doc. 1, p. 28) Bodney concludes that the witnesses' descriptions vary so much that the various robberies must have been committed by different men.

Bodney is correct when he observes that the witnesses' descriptions varied, and assuming their descriptions were accurate, a reasonable person could conclude that Bodney could not be guilty of all four of the robberies for which he was convicted. That however is not the test. It does not matter if a reasonable person could conclude that Bodney was innocent. Bodney must show that no reasonable person could conclude that Bodney was guilty. That he cannot do.

Sufficient evidence of identity was presented for a reasonable person to find that Bodney was the culprit in each of those four robberies.

At trial, eye witnesses R.D. and P.N. identified Bodney as the one who committed the attempted robbery of the CVS and the robbery of the 99 Cent Store, respectively. (Doc. 13-7, pp. 107-110)  Direct eye witness identification was not presented for the Dollar General robbery or the Quick Mart robbery, but other evidence was introduced. A cashier testified that the robber of the Dollar General had something wrong with his eye. *Id.*  Bodney's girlfriend testified that Bodney had an eye infection in late August of 2014. *Id.*  Also, "[s]urveillance video footage of the [Dollar General] robbery showed a man matching Bodney's height and build." *Id.*  With regards to the Quick Mart robbery, "[s]urveillance video footage . . . showed a man with Bodney's physical and facial features." *Id.*  "Additionally, a palm print found on the counter near the cash register was matched to Bodney's hand." *Id.*

Moreover, the State introduced evidence that Bodney was short of funds at this time and stated one week before the first robbery: "I gotta do what I gotta do, times is [sic] hard and I'm tired of being broke, I'm tired of waitin['] for shit to get right, I'm a go get it the best way I know how and if I get caught I'm not goin['] bac[k]." (Doc. 13-7, pp. 107-110) The State also introduced evidence that Bodney told police that he was in Las Vegas when the robberies were committed, correctly identifying the time period when the robberies occurred even though, at that point, the police had not told Bodney when the robberies had taken place. *Id.*  For each of the four robberies, sufficient evidence of identity was admitted for a reasonable person to find beyond a reasonable doubt that Bodney was the culprit. *Id.*

With respect to the prohibited possessor charge, Bodney argues that evidence was presented that points to his innocence. The woman in whose house the gun was found "was known to have guns in her house." (Doc. 1, p. 29) He concedes that DNA on the gun could have matched him, but he argues that his DNA could have transferred from his hat to the gun. (Doc. 1, p. 30) Again, Bodney argues that a reasonable person could have returned a not guilty verdict. As the Arizona Court of Appeals noted, however, sufficient evidence was presented for a reasonable person to find the elements of this offense proven beyond a reasonable doubt.

The gun was found in M.D.'s house under Bodney's "Miami Heat" hat. (Doc. 13-7, pp. 101-110 )  DNA found on the gun matched Bodney, although the test was not perfect and would have statistically matched 1 in 750 African American males.  *Id.*  M.D. testified that "she did not have any guns and that she and her school-age son were the only people who lived there."  *Id.*  Bodney's girlfriend testified differently, but the jury apparently discounted her testimony, and this court cannot second guess the jury's credibility assessments.  *See Kyzar v. Ryan*, 780 F.3d 940, 943 (9th Cir. 2015)  (punctuation modified).

Sufficient evidence was presented such that a reasonable person could find Bodney guilty beyond a reasonable doubt of the charges for which he was convicted.  Bodney has not shown that prior adjudication of this issue "resulted in a decision that was contrary to or an unreasonable application of Supreme Court precedent" or that it "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

Discussion: Ineffective Assistance of Counsel

In his third Claim, Bodney argues trial counsel was ineffective for failing to challenge the grand jury findings a third time.  (Doc. 1)  Bodney raised this claim before the Arizona Court of Appeals in his petition for review of the trial court's denial of his post-conviction relief petition.  (Doc. 13-11, p. 28-29)

On October 27, 2014, Bodney's trial counsel filed a motion that his case be remanded to the grand jury for a new determination of probable cause.  (Doc. 13-1, p. 4)  Counsel argued that the state failed to present exculpatory evidence and testimony presented was materially misleading.  *Id.*  Counsel withdrew the motion when the State agreed to voluntarily remand the case to the grand jury.  (Doc. 13-1, p. 16)  The case was presented to the grand jury on November 14, 2014. (Doc. 13-1, p. 20)  On December 24, 2014, Counsel filed a second motion to remand the case for a new determination of probable cause.  (Doc. 13-1, p. 19)  Counsel argued that presentation of the evidence created "an erroneous understanding of the existing evidence."  (Doc. 13-1, p. 19)  The trial court granted the motion on February 2, 2015.  (Doc.

13-3, p. 9)  The grand jury returned a thirteen-count indictment on February 6, 2015.  (Doc. 13-3, p. 11)  Counsel chose not to file a third motion to remand but instead filed a motion to sever counts on December 17, 2015.  (Doc. 13-3, p. 14)

In the pending petition, Bodney claims that trial counsel was ineffective for failing to file a third motion to remand.  (Doc. 1)  He asserts that at the third grand jury proceeding, "the state chose . . . to solicit the same false and misleading testimony from an always compliant detective . . . and again deprive[d] the jurors an opportunity to consider the exculpatory evidence." (Doc. 1, p. 33)  He asserts that counsel's "sudden inaction was nothing less than the legal abandonment of petitioner's cause, was extremely prejudicial, and constituted egregious ineffective assistance of counsel."  (Doc. 1, p. 34)

Bodney raised this claim in his petition for review of the trial court's dismissal of his post-conviction relief petition.  The Arizona Court of Appeals denied the claim explaining that Bodney "has identified no authority or evidence suggesting that trial counsel falls below prevailing professional norms by declining to seek collateral review of a trial court's discretionary ruling."  (Doc. 13-11, p. 29)

To succeed on an ineffective assistance claim, the habeas petitioner must prove "his counsel's performance was deficient in violation of the Sixth and Fourteenth Amendments" and "he was prejudiced by counsel's deficient performance."  *Clark v. Arnold*, 769 F.3d 711, 725 (9th Cir. 2014).

"Counsel is constitutionally deficient if the representation fell below an objective standard of reasonableness such that it was outside the range of competence demanded of attorneys in criminal cases."  *Clark*, 769 F.3d at 725 (punctuation modified).  "A defendant is prejudiced by counsel's deficient performance if there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Clark*, 769 F.3d at 725.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*.

"When evaluating counsel's conduct, [the court] must make every effort to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the

- 13 -

time." *Clark*, 769 F.3d at 725 (punctuation modified). State court review of counsel's performance is therefore highly deferential. Federal court review on habeas is "doubly deferential." *Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010).

In this petition, Bodney claims trial counsel was ineffective for failing to file a third motion to remand because the evidence presented to the grand jury was false and misleading. He does not explain, however, what evidence was presented or why it was false and misleading. (Doc. 1, pp. 33-34) He presents no evidence or authority to establish that his counsel's performance was deficient. *Id.* He simply states in a conclusory fashion that the evidence was false, counsel's performance was deficient, and he was prejudiced. That is insufficient. *See Jones v. Gomez*, 66 F.3d 199, 204 (9th Cir. 1995) ("[C]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief."); *see also Cullen v. Pinholster,* 563 U.S. 170, 181, 131 S. Ct. 1388, 1398 (2011) ("We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.").

Bodney has not shown that prior adjudication of this issue "resulted in a decision that was contrary to or an unreasonable application of Supreme Court precedent" or that it "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

//
//
//
//
//
//
//
//
//
//

## RECOMMENDATION

The Magistrate Judge recommends that the District Court, after its independent review of the record, enter an order denying the petition for writ of habeas corpus.

Pursuant to 28 U.S.C. §636 (b), any party may serve and file written objections within 14 days of being served with a copy of this report and recommendation.  If objections are not timely filed, they may be deemed waived.  The Local Rules permit a response to an objection.  They do not permit a reply to a response without the permission of the District Court.

DATED this 14th day of September, 2021.

*Leslie A. Bowman*
Leslie A. Bowman
United States Magistrate Judge